I have a repeat appearance by Mr. Hillis. By the way, Ms. Jacobs, is that your daughter? This is my daughter. Welcome to our court. I hope we haven't scared her away from law. I hope not either. May it please the court. Again, I'm Daniel Hillis. I'm with the Federal Public Defender's Office. And this time I represent Mr. Jurgens. Mr. Jurgens raises two issues on appeal. First, he asserts the district court erred by imposing 20 years of supervised release. That is, of course, a problem in our view because the district court didn't explain it. It also sets the backdrop for why all these various conditions of supervised release get to be of greater concern to us. Before I go down to that path, I'd like to finish on the one that I'm on. District court is required to explain its decisions, such as the length of supervised release. That didn't happen here. What was the reason defense counsel at the district court recommended 10 years of supervised release? Why 10 years? That wasn't the minimum. No, it wasn't. It's up to lifetime supervised release. I believe it was five years to life. So what reasons did the defense counsel give for 10 years? I don't believe there was an explicit statement about why 10 years was necessary versus 20 versus life versus five. But then that becomes something for the district court to justify. So if the judge had given 10 years, that would have been okay? That would have been permissible? I think we'd have a difficult time standing here straight-faced. We'd have a waiver problem, I suppose. But no more reasons would have been stated. I think that's correct. In any event, there's a request for 10, the government asked for 20, the district court gave 20 and gave no explanations. So if the district court wishes to impose 20 years of supervised release, which is a long time under onerous conditions, the district court should explain. And we should know the efficacy of 20 years of supervised release and the treatment that a person gets and all of this to know that if it's necessary versus some shorter period of time so it's not a drain on the probation office or an additional burden on the court. A supervised release period can be terminated at really any point, can't it? After one year. After one year. So if 20 years is too long after even two years, the defendant can come back into court and say, I performed really well, my life is different, please terminate this. Or the probation officer can request that, right? Even without the defendant requesting it. Love for it to happen. I don't know that it happens very often. I wish that it would. It does happen though, doesn't it? I'm not certain that it happens very often. So we have individuals in the guideline provision, the comment on that says after you serve the one year and you complete the programs or whatever is necessary as part of your supervised release, that you can make that effort. But we have people who complete the programs and are still on supervised release. I suppose probation services has some data on how many times a year or in what percentage of cases they request an early termination. We can probably track that down. I imagine they have that. It would be great to know. I don't know it though. I do know that he got 20 years. He would like to have gotten only 10. And when I say only 10, that's a decade. It's still a long time. And he can get all the treatment that he needs, hopefully long before 10 years are up. And he can get a lot of it in the Bureau of Prisons such that the various conditions that are going to be imposed may not be necessary anyway. Unless the Board has additional questions on that topic, I move to the second issue on the appeal. And that is with regard to the conditions that are imposed. The discretionary conditions that are imposed are a problem for us here like they are in some of the other cases that we've been arguing this week. We had three of them yesterday. Weren't there four yesterday? I had three of them. I'm sorry, my colleague had four. There were four, I think. Yes, but there were... The standard conditions, all the discretionary conditions were at issue in the three that I argued. And I'm arguing those matters here again today. We have a 3583D problem. The District Court didn't make the necessary findings, didn't go through the considerations of the 3553A factors when imposing all the various conditions. And we've briefed the vagueness and over breadth constitutional implications in those regards. And I'll stand on my brief as to those. However, I do want to spend a little time on the Fourth and the Fifth Amendment issues. Because although I believe it would be appropriate for this Court to vacate and remand based on the procedural deficiencies that we've identified, if this Court would issue an opinion explaining about the conditions and which ones are correct and which ones aren't, insofar as the vagueness or the deficiencies are concerned, it would be appropriate to do so to the Defense Counsel and to the government, not to mention the District Courts. And so, I'll start with the Fourth Amendment. We alluded to this in the earlier argument. We have conditions that don't require reasonable suspicion. They don't require that the search be done in a reasonable manner. It opens the defendant up to all sorts of unreasonable governmental intrusions. And that should at the minimum be limited to a reasonableness requirement. The standard condition doesn't even require that. Certainly, he has limited Fourth Amendment protections, but he still has them. And reasonableness is the touchstone of the Fourth Amendment, as the Supreme Court stated in Pennsylvania v. Mim. And we should have a reasonableness requirement here. So, would the requirement then, would you suggest, Mr. Ellis, just say reasonable? It's better than what we have now. And so, if we need to argue later about whether the search was reasonable, we at least have a parameter. There would be case law that would discuss about reasonableness in a given application. We don't have a reasonableness requirement. I suspect that the reasonableness would probably, I'm assuming, occur on the frequency, not the invasiveness, right? Because it's pretty clear, it's pretty broad, the ability to search. There's been a suggestion by your colleagues about the understaffed nature of the probation office, such that we don't really have routine visits by probation officers. And if that's the case, then we don't have the sort of intrusiveness and unreasonableness that I'd be concerned about. I just don't want a client ever to fall victim to something that we could have prevented by asking for something as basic as a reasonableness requirement. So, you're equating a home visit with a Fourth Amendment search? Yes. I don't get, it may not go beyond the front door, I suppose. How is there a search in that? Sure. I know the government likes to draw that distinction. It's a home visit, but a search. Dress it up any way you want. You're going in there to look for evidence of contraband and the condition of supervised release allows them to action. You're going there to see if he really is living where he says he's living. You're going there to see who else is there. You're going to see what kind of neighborhood it is and so on. And there's a provision that allows them to seize any contraband or to notice any contraband. They're there to look for things that you're doing wrong, aren't they? I think that they are. It doesn't seem unreasonable that a U.S. probation officer can seize contraband when visible. This does not authorize the officer to lift a cushion up or something like that. I'm not certain that that's exactly the case. I think there's been some recent case where a person was a sex offender. They went in and did look around under some areas and we need to know what it is. But certainly if you have an individual for law enforcement who is insisting on coming in your home and is allowed to do so by this condition, there is an aspect of a search that's inherent. The probation officer is in this sort of gray area between law enforcement and between a judicial officer, really. Somewhere in between. Not one of them. And I believe when the United States Probation Office was constituted in 1925, it is as law enforcement officers. I want to go briefly to the Fifth Amendment issue because that is perhaps paramount. They don't have arrest powers, do they? I'm not certain if they have arrest powers. It doesn't take much to get somebody arrested, though, for what they see. So we're not far removed from it. As for the Fifth Amendment, I'll state just briefly, as I did in my briefs, an individual who is convicted still has a Fifth Amendment privilege against self-incrimination. They have been, and that's recognized in Minnesota v. Murphy, they have requirements that it's an affirmative duty on a defendant to divulge information that may be incriminatory. And that is inconsistent with the Fifth Amendment's protections. And so we ask, at the very least, if the probation officers want to pursue its legitimate goals in supervising individuals, those individuals have that information subject to a cast-gar limitation if they provide it to the probation officer. Mr. Hill, I appreciate how ably you present these points, and that's why I want to go just for a second in the dialogue as obviously we've been benefited by Mr. Hartzler's comments. If specificity in these special conditions increases, as case law would now point us in that direction, is there a concern, for example, in the defense bar that if we speak to in the first three years of supervised release in a special condition which is justified, a district judge says, I believe there should be quarterly home visits. Isn't there the potential to impact the very concerns you have about how the life is led post-custody? In other words, as we focus the special conditions in a manner which arguably informs the defendant, doesn't it carry with it the potential then for more onerous aspects of a special condition? It can, but those are going to have to be things that they justify, and I think that it's unfortunate that if we're in anybody's crosshairs now by raising what I think are legitimate concerns, that's just because I think the conditions have been so poorly written. And furthermore, if we consider this context, these conditions are basically things that were adopted wholesale following the termination of the parole provisions. So there was a quid pro quo originally with these conditions. It doesn't exist here. And people weren't challenging those things because they got to get out of prison early and be under these conditions. And you'd agree to lots of conditions that might otherwise be objectionable if you get out of prison early. But we have people fulfill their complete sentence and then are subjected to these conditions. And I'd offer this. Our clients would be agreeable to negotiating the length of imprisonment if they could get a lower sentence and accept these onerous conditions. That would be fair. Well, perhaps in a future where there's increased focus on the length of sentences, criticism of the length of initial sentences, that we may create a very, very, if not onerous, new world of supervised release. And I just, I'm not cautioning that. I'm just concerned about it. Because there's tradeoffs here. I think Judge Tinder aptly referred to it in another case about what a sentencing judge views in the totality of how society is benefited by the sentence he or she imposes, as well as the associated supervised release. So I mean, there's gray areas. This is a very challenging area to both be responsible about in being fair, but at the same time giving reasonable direction to district judges. I'd trade much to get out of prison early, and it would be on me or on my client to honor the obligations in exchange for that privilege to me. Well, do you think we'd have a body of litigation then surrounding how supervised release is carried out? I mean, is that the future where increasingly we question the probation department and how it attends to executing these special conditions? Prison is expensive. Supervised release is less so. If we can have the conditions better defined and individuals are able to live under them and they know the risk of going back if they violate, I think that we would serve a lot of good purposes by doing that. But it starts by getting the conditions right. Everything else has to follow from that. And the manner in which the conditions are imposed requires support from the government to justify the condition. And we're not proceeding in the right direction on that. We are trying to come up with too many conditions too far in advance. That's a continuing problem. Thank you, Mr. Ellis. Thanks for your views. Let me begin by what I see as a really very fundamental difference between Mr. Hillis' view and the government's view from the voice of Joe Harser, and that is that probation officers from his perspective are like Javert said to you a moment ago, that when they conduct a home visit, they're there to look for things that are wrong. And I would guess that in the probation officers that the three of you have worked for, they are not Javert. Worked for us. We didn't work for them. I misspoke. I apologize for that. Worked with you or for you. I think that what probation officers look for in a home visit is for things to be hunky-dory, for everything to be good, for the defendant now to be thriving, improving, integrated back into society. If they're looking for contraband, sure. The condition provides that if contraband is in plain view, they can seize the contraband. But what would we expect? That seems absolutely normal. But I think that the difference is significant in terms of the perspective that you bring a perspective based on your own personal experience. That's what we do. And I'm hoping that this court and the other judges in the Seventh Circuit recognize that probation officers are not evil people. I mean, a lot of them have backgrounds in sociology and such. They're really trying to do what is best both for society and for the person that's on supervised release. Now, I appreciate, Judge Tinder, that I actually cannot remember whether Judge Flom was elevated before the sentencing guidelines came into effect. But it's a similar system, whether you're supervising someone on supervised release or they're on probation. We've had similar systems for many years and probation officers come from similar backgrounds for all those years. I know I'm harping on this, but I think it's important. There is this sense that I've gotten from Mr. Hillis, and I understand he's representing his clients. He's doing a great job at it. But probation officers are not out looking for evil any more than you're looking to reverse the district court every time a case comes before you. I would hope that you would think, for the most part, that district courts in this is most often recommendations of the probation office. Absolutely. Not the U.S. Attorney's Office. That is correct. Yes. Yes. And they are now, I believe, in every district in this... I can't speak for Wisconsin. Certainly in every district in Illinois, they are included in the pre-sentence report. Oh, I was on a case here before with a sitting judge from the Northern District of Indiana, I believe, who said, we ought to do that in our district. So I think they may be doing it in the Northern District of Indiana. Yes, the pre-sentence report typically comes out now with the recommendations of special conditions from the probation office. But I think that's appropriate. Mr. Hillis suggests somehow that the government bears the burden of proving that these special conditions are appropriate. It's really the court's responsibility to decide what conditions are appropriate for the defendant. I haven't seen any case law that suggests that the burden is on either the defendant or the government. Judge Schindler, you're concerned about that, I sense, and I'm not sure I'm answering your question adequately. No, actually, you went the direction I thought you would go. That's fine. Okay. Well, let me then add, the special conditions come out in the pre-sentence report. The practice of our office now is to make sure that there will be a record that supports any special condition that's objected to. Our goal, of course, is to make sure that we avoid unnecessary appeals. So if there is a condition that seems unsensible, let me move off special conditions and back to the standard conditions, if you don't mind. In this case, for example, we have a standard condition to support your dependence. We have no dependence. If anybody had looked at that beforehand, that condition would have simply been eliminated. We are definitely doing the same thing on special conditions now. If there is an objection to a special condition, then the prosecutor is going to go to sentencing, either trying to assist in defining it so it's acceptable or eliminating it. Oh my gosh, this is the very case. You see that in this case, where Judge Darrow did a terrific job of modifying the special conditions to eliminate any objections. That's why it's so disappointing that these special conditions are now on appeal. She went through each one of them and completely eliminated the seventh condition that was in the PSR. I would hope that you would recognize that's precisely what we would like our district court judges to do. So that takes us back then, I'm going to assume for a moment, that the special conditions are not in any way plainly erroneous in this case. Now, the standard conditions. We talked earlier today about home visits. We talk about them again today. I'm hoping that the court will take a view. I believe Judge Tender, you suggested that it's not a search. It's not the purpose. They're not opening up the medicine cabinet and looking under cushions in the sofa. They're going in for the various reasons that the court has already recognized. And that's completely appropriate. And as Mr. Hillis himself acknowledges, defendants on supervised release have a diminished expectation of privacy. Bear in mind, they're told in the judgment and commitment order that they have a diminished expectation of privacy because a probation officer can show up at any time. They have an expectation. He says, well, there should be reasonableness implanted on that. No, the Constitution provides that it's a reasonable search. What could be more reasonable than telling somebody that it's on supervised release that you should expect your probation officer at any time? And what a terrific deterrent. That's precisely what we want. We want defendants to come out of prison and be able to improve their lives and not commit any crimes. And a home visit is a tremendous, an unannounced home visit. The threat of an unannounced home visit is an excellent, superb way for a defendant, to encourage a defendant not to engage in illegal activity. I suspect that wouldn't be Mr. Hillis' view of restorative justice, but we'll give him a chance to respond to that. You're probably right, but it should be, right? I don't know what you want me to speak to in terms of the Fifth Amendment issue. It's certainly comparable. What I don't understand about this proposal that we implant at this point, the Castigar immunity, is why in the world wouldn't this court wait until there's a problem? We all know from our experience that there are some defendants that can be advised of the Miranda rights six ways a Sunday and they still confess. There's no one suggesting that someone on supervised release can't exercise the Fifth Amendment privilege. And I would guess that they're not going to be compelled to give up their Fifth Amendment privilege. Mr. Hillis cites this one case that one of the magistrate judges here, Vasquez, handled, and she concluded that the defendant was compelled and that therefore supervised release should not be revoked. My attitude toward that case is it seems like it's tremendously favorable to the government's position in these cases because the system works when there is a circumstance in which somebody on supervised release is in effect compelled to give up the Fifth Amendment privilege. And the magistrate judge, whoever handles that case, recognizes that and in effect grants Castigar immunity. But why would you do that up front? We want to establish a relationship between the defendant and the person who supervises, the probation officer, an honest, truthful, you know, I got a call from your girlfriend who said you never showed up, you didn't return home last night. What happened? It doesn't mean, we're not looking for him to commit a crime or anything of that sort. We're just trying to make sure that the person on supervision is adjusting well to being out on release and is improving their life and not committing additional crimes. That's the whole purpose. You haven't asked any questions about the 20-year supervised release and I hope that I can discern from the fact that you recognize that the defendant himself asked for twice the mandatory minimum there. The record is completely adequate to support the 20-year supervised release period. So if there are no further questions, thank you again. Thank you, Mr. Hartzler. Mr. Hillis. I appreciate the extra time, Your Honor. I know I'm past my limit, so I'll try to be very brief. Individuals cannot exercise their Fifth Amendment rights and do that effectively when they are under penalty of revocation if they fail to comply with the conditions of supervised release. Defendants are in a bad position when they don't have their lawyers there to help them and they are being interviewed and have to give information over to a probation officer. And I'm not trying to demonize probation. There are really some excellent people who work there. There's some good and some bad everywhere you go, defense attorneys included. But we're trying to look out for our clients. That's all we're trying to do here today. We're trying to respect the constitutional limits of the conditions, have the conditions better applied, better worded. Those are our efforts here. And I do think the government bears the burden to establish the necessity of a condition. We cite a case on that. It's a Ninth Circuit case. We don't have authority that I was able to find in this circuit, but United States v. Weber, 451 F. 3rd 5528 558, Ninth Circuit 2006. It's the government's burden and it should be. They're the better explanation or refinement of the condition on the district court level. They'll certainly have a better possibility of defending it successfully on appeal. So it all just makes sense. They want the condition. Let them go ahead and say why that it should be imposed. Should we view the report from the probation department as some allied additional comment by the prosecutor? Aren't we supposed to see that coming to a district judge as unfettered? The conditions? The entire report. I know they're government employees, but are you suggesting because the probation department, where it's housed and the like, that their lawyer, so to speak, or advocate is the U.S. attorney? The probation office has an obligation to put the condition in the PSR. That's very clear. 32D1 in the guidelines. We have a peculiar position on the flip end that the probation office that insisted on the condition, whether it's justified by the government, the government has to defend it and sometimes it has an easier time than others depending on the condition. But then that probation office, one of its officers, is basically the case agent at the revocation hearing and that's very odd to me. But in any event, we have a duty by the government to defend the condition and the Ninth Circuit at least took the position, I believe in that Weber case, saying that it's the government's obligation to support the condition. Ultimately though, it's the district court's responsibility to clearly impose the sentence and we have a problem with that here. And lastly, if I say about supervised release, we have no idea about the efficacy of supervised release. However, there have been some practices by courts in the past. I believe Judge Nancy Gertner is the one that I'm thinking of that there was a detailed supervision plan that was put in place with respect to each individual defendant. I don't know that that allowed for the wholesale adoption of all these conditions and things, but that's the effort that we should go for because the primary purpose of supervised release under United States v. Johnson is rehabilitative. We should have a plan in place, not conditions that are adopted wholesale. And the efficacy is unknown. Thanks folks for the excellent presentation on all these cases. Thank you.